IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| MARQUIS D. FRANCIS,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>PAYCOM PAYROLL, LLC<br><br>　　　　　Defendant. | Case No.: |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Marquis D. Francis ("Plaintiff" or "Mr. Francis") by and through his counsel brings the following Complaint against Paycom Payroll, LLC ("Defendant" or "Paycom") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check reports that Defendant published to Plaintiff's potential employers, which falsely portrayed Plaintiff as a rapist.

**INTRODUCTION**

1.　　This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.　　Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.　　Defendant falsely reported to Plaintiff's prospective employers that Plaintiff was convicted of "burglary – enter house to rape." Defendant's reporting made it appear that Plaintiff's crime was sexual in nature, which is materially misleading, grossly inaccurate, and

1

untrue.

4. Plaintiff was convicted of burglary under VA Penal Code 18.2-90, the name of the Statute is as follows, "entering dwelling house, etc., with the intent to commit murder, rape, robbery, or arson." However, public records make it clear that Plaintiff had no intent to rape, but his intent was to rob the dwelling. Plaintiff's Sentencing Order states the offense description as "burglary" only.

5. Plaintiff's prospective employer denied Plaintiff's job applications after receiving an employment background check report from Defendant, which included the inaccurate and misleading offense as "BURGL ENTER HOUSE TO RAPE ETC." making it look like Plaintiff is a rapist, which he is not.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from the City of Virginia Beach, Virginia pertaining to the burglary prior to publishing Plaintiff's report to his prospective employers.

7. Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that Plaintiff had no intent to rape.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Upon information and belief, Defendant's inaccurate reporting cost Plaintiff a good

paying job and job security.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check reports; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA; and for failing to notify the consumer of the fact that public record information was being reported by it, together with the name and address of the person to whom such information was being reported, in violation of the FCRA, 15 U.S.C. § 1681k.

**PARTIES**

13. Marquis D. Francis ("Plaintiff" or "Mr. Francis") is a natural person residing in Virginia Beach, Virginia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant Paycom Payroll, LLC ("Defendant" or "Paycom") is a Delaware corporation doing business throughout the United States, including the State of Virginia and in this District.

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with

a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible

accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Under 15 U.S.C. § 1681k, consumer reporting agencies are required to "notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported.

29.     Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

30.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

31.     As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

32.     The criminal background check industry takes in revenues in excess of three billion dollars, annually.[2]

33.     Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

34.     Background check companies, like Defendants, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35.     Given that Defendant is in the business of selling background checks, Defendant

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").
[2] IBISWorld, Inc., *Background Check Services in the US: Report Snapshot*, available at http://www.ibisworld.com/industry/background-check-services.html.

6

should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

36.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38.     Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39.     Appropriate quality control review of Plaintiff's reports would have made clear that Defendant was portraying Plaintiff as a rapist when he is not.

## FACTS

**Plaintiff Applies for a Job with Atlantic Shores Cooperative Association ("Atlantic")**

40.     In or around November 2025, Plaintiff applied for employment with Atlantic Shores Cooperative Association ("Atlantic").

41.     During the interview on November 11, 2025, Plaintiff explained that he had a criminal record. Nevertheless, the interviewer for Atlantic proceeded with his application.

42.     Thereafter, Atlantic offered Plaintiff a job for the position for which he applied as a full-time Line Cook with a wage of $17 per hour. However, Atlantic's offer was contingent on Plaintiff passing a background check ("employment report").

**Defendant Published an Inaccurate Background Check Report to Atlantic**

43.     Atlantic contracted with Defendant to conduct background checks, including

criminal background checks, on its prospective employees.

44. In or around November 2025, Atlantic ordered a criminal background check on Plaintiff from Defendant.

45. On or about November 17, 2025, in accordance with its standard procedures, Defendant completed its employment report about Plaintiff and sold the same to Atlantic.

46. Within that employment report, Defendant published materially misleading and inaccurate information about Plaintiff.

47. Specifically, Defendant's employment report about Plaintiff reported Plaintiff's burglary conviction as materially misleading and grossly inaccurate, which appeared in the employment report as follows:

**Paycom Payroll, LLC**

```
Charge #1
     Charge    BURGL ENTER HOUSE TO RAPE ETC.
  Crime Type   FELONY
  Disposition  GUILTY
     Statute   18.2-90
Charge Comments : Statute: 18.2-90
Sentence Comments : VERIFIED SENTENCE INFORMATION NOT AVAILABLE;
```

48. The Charge "Burglary - Enter House to Rape Etc." reported by Defendant about Plaintiff is materially misleading and grossly inaccurate because it makes it appear that Plaintiff's crime was sexual in nature.

49. Plaintiff has never been convicted of attempted rape or rape in his life.

50. A cursory review of the widely available underlying public court records confirms that Plaintiff was convicted of burglary only in connection with Charge #1. The public record shows that in Plaintiff's sentencing order, the offense is described as "burglary."

51. The sole reason the materially misleading and grossly inaccurate conviction of

8

"Burglary - Enter House to Rape" was reported was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about Plaintiff to Plaintiff's prospective employer.

52. Defendant failed to use strict procedures to ensure its report about Plaintiff contained information that was complete and up to date.

53. Had Defendant followed reasonable procedures, it would have discovered that Plaintiff's conviction was for burglary only, that there was no sexual intent connected to the crime, and that it should not have reported the same.

54. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer materially misleading and inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

55. Further, Plaintiff was not informed by Defendant that it had provided the public record information likely to have an adverse impact on employment to Plaintiff's prospective employer at the time the information was provided.

56. Accordingly, Plaintiff was not afforded an opportunity to dispute and correct the inaccurate report *before* Defendant published the inaccurate report containing the adverse information to Plaintiff's prospective employer and before Plaintiff's prospective employer made an adverse decision to deny Plaintiff's employment application.

57. The FCRA has an employment-specific provision designed to address the very kind of harm that the Plaintiff suffered as a result of Defendant's conduct when public records are likely to have an adverse affect on employment, which is to either provide an immediate notice to the applicant at the time it published public records to the user of the report or it must maintain strict

procedures to ensure the public record information is complete and up to date.

58. Defendant violated 15 U.S.C. § 1681k(a) because it failed to comply with either subsection § 1681k(a)(1) by failing to notify Plaintiff that it had provided adverse public record information to Plaintiff's employer at the time it provided the public record information to Plaintiff's employer; or subsection § 1681k(a)(2) by failing to maintain strict procedures to ensure the adverse public record information it reported about Plaintiff was complete and up to date.

### Atlantic Denies Plaintiff's Job Application

59. On or about November 19, 2025, Atlantic rescinded its earlier job offer to Plaintiff based on the materially misleading and inaccurate employment report.

60. Plaintiff was not informed by Defendant that it had provided the criminal public record information likely to have an adverse impact on employment, and was not allowed an opportunity to dispute and correct the inaccurate information *before* Atlantic made an adverse decision not to offer him employment.

61. Shortly thereafter, Plaintiff obtained a copy of the subject employment report and was shocked upon reviewing the "Burglary - Enter House to Rape" conviction contained within.

62. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that portrayed him as a rapist, both in relation to the Atlantic position, but also the impact of the same on his future.

63. Specifically, Defendant reported "burglary - enter house to rape" making it appear that Plaintiff is a rapist. Public records clearly show that Plaintiff had no intent to rape. Plaintiff's sentencing order depicts "burglary" only under the offense description. The underlying court records were available to Defendant prior to publishing Plaintiff's employment report to Atlantic, but Defendant failed to obtain or perform even a cursory review of such information.

**Plaintiff Disputed the Misinformation in Defendant's Employment Report**

64. On or about November 21, 2025, desperate to secure employment and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via email with Defendant.

65. Plaintiff identified himself and provided information to Defendant to support his dispute. Plaintiff provided Defendant with his identification card and Court records from his burglary conviction.

66. Plaintiff specifically disputed the inaccurate and materially misleading reporting of "Burglary - Enter House to Rape."

67. Plaintiff specifically asked Defendant to investigate and correct its reporting in any employment report about Plaintiff.

68. On or about November 26, 2025, Plaintiff received Defendant's correspondence confirming it received his dispute.

69. On or about December 3, 2025, conceded its error and emailed Plaintiff the updated report.

70. Plaintiff reasonably believes that due to Defendant's inaccurate and materially misleading reporting in the first instance, Atlantic formed negative opinions about Plaintiff and/or moved on to other candidates.

71. Defendant's false report cost Plaintiff a promising, well-paying job with Atlantic.

72. But for Defendant's inaccurate employment report, Plaintiff's job offers would have proceeded to hiring actions, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

73. Plaintiff felt very defeated and frustrated at a time when he was desperate for a

steady income and a reliable job.

74. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

75. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## **CLAIMS FOR RELIEF**

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to
### Assure Maximum Possible Accuracy

76. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

77. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

78. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

79. At all times pertinent hereto, the above-mentioned employment reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

80. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the

employment reports it sold about Plaintiff as well as the information it published within the same.

81. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

82. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

83. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681k(a)(1)**
**Failure to Provide "At the time" Notice**

84. Plaintiff re-alleges and incorporates by reference the allegations set forth in paragraphs 1-75 as if fully stated herein.

85. The FCRA imposes specific requirements on consumer reporting agencies, like Defendant, that sell and distribute a consumer report for employment purposes that include public records.

86. Specifically, 15 U.S.C. § 1681k(a) requires that a consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and

reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

87. Upon information and belief, Defendant violated 15 U.S.C. § 1681k(a) because it failed to notify Plaintiff of the adverse public records information it had provided to Atlantic at the time it provided his consumer report to Atlantic, and it failed to maintain strict procedures to ensure the adverse information it reported about Plaintiff was complete and up to date.

88. Defendant's consumer report about Plaintiff was furnished for an employment purpose and contained one or more public records of the type that may adversely affect an employer's hiring decision.

89. Plaintiff did not learn of the inaccurate adverse information in Defendant's consumer report until Atlantic informed him of the adverse action.

90. Defendant failed to comply with the rigors of 15 U.S.C. § 1681k(a)(2) and therefore must necessarily rely upon its compliance with § 1681k(a)(1).

91. Upon information and belief, Defendant did not send to Plaintiff the requisite notice pursuant to 15 U.S.C. § 1681k(a)(1).

92. Upon information and belief, Defendant does not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within thirty days before it furnishes and resells these records in one of its reports.

93. Defendant violated 15 U.S.C. § 1681k(a)(1) by failing to provide the required FCRA notices to Plaintiff.

94. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

95. Defendant willfully violated 15 U.S.C. § 1681k(a)(1) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: December 25, 2025,

*/s/ Aryeh E. Stein*
Aryeh E. Stein, Esq.
Bar No. 45895
Meridian Law, LLC
1212 Reisterstown Road
Baltimore, MD 21208
T: (443) 326-6011
F: (410) 782-3199
E: astein@meridianlawfirm.com

*Attorney for Plaintiff*
*Marquis D. Francis*
